Paris Manufacturing Company v. Commissioner.
Paris Mfg. Co. v. Commissioner
Docket No. 25174.
United States Tax Court
1951 Tax Ct. Memo LEXIS 52; 10 T.C.M. (CCH) 1064; T.C.M. (RIA) 51325; October 30, 1951
*52 On July 16, 1945, petitioner paid $11,000 to the United States in an agreed settlement of a claim by the O.P.A. that petitioner had made overcharges on the sale of some of its manufactured products, to wit, chairs and stepstools, covering the years 1944 and part of 1945. Petitioner, in calculating its ceiling prices for these products under Maximum Price Regulation 188, took practicable precautions and its actions were in good faith and not the result of an unreasonable lack of care. Held, the payment of $11,000 is deductible under section 23 (a) (1) (A) of the Internal Revenue Code. Pacific Mills, 17 T.C. -, promulgated October 26, 1951, followed. S. W. Thaxter, Esq., for the petitioner. William C. W. Haynes, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1945 of $5,830. The deficiency notice does not explain how the Commissioner determined the deficiency, that is to say, it does not show what adjustment he made to the net income as reported by petitioner on its return. The amended petition assigns errors as follows: "4. *53 The determination of the tax set forth in said notice of deficiency is based upon the following error: "(1) With respect to the aforementioned taxable year, the Commissioner erred in disallowing as a deduction from the petitioner's gross income for the year 1945 the sum of $11,000.00 paid to the office of Price Administration on July 17, 1945 in compromise of alleged overcharges of O.P.A. ceiling prices, as an ordinary and necessary business expense under the provision of Sec. 23 (a) (1) (A) of the Internal Revenue Code. "(2) If it be found that Commissioner did not err as stated above, he erred in including in petitioner's gross sales for 1945, approximately one half of the alleged overcharges, or $5,500.00, which represented so much of the alleged overcharges as were attributable to 1945 sales but which were paid to the O.P.A. in that year, and credited against gross income." Findings of Fact Paris Manufacturing Company, hereafter called petitioner, is a corporation which filed its income tax return for the calendar year 1945 on the accrual basis with the Collector for the District of Maine. Petitioner is a corporation engaged in the business of manufacturing *54 wooden products: chairs, stepstools, and other similar articles. Petitioner was a family corporation. George Morton, now deceased, was president and treasurer in 1945, and Clarence G. Morton, a brother of George, was vice president and testified at the hearing. With the enactment of the Emergency Price Control Act of 1942 and the promulgation of regulations thereunder by the O.P.A., petitioner was required to and did provide a base period statement which set up its customers as wholesalers and jobbers, retailers and small users. This base period statement complied with O.P.A. regulations. Petitioner was aware that there were Price Control Regulations. Maximum Price Regulation 188, hereafter called MPR 188, issued pursuant to the Emergency Price Control Act, as amended, established the prices for manufacturers of chairs and stepstools. Sometime in 1944, the Maine Office of Price Administration pursuant to directives from Washington, D.C., conducted a survey of the wood manufacturing industry and during the course of this survey they investigated the petitioner and found what they believed to be violations of MPR 188. As stated above, petitioner had previous to this time complied *55 with the regulations by filing a base period statement listing the prices charged to various classes of customers. The alleged violations claimed by O.P.A. concerned the sales of three items: #30 chairs, #10 chairs, and #7 stepstools. Six thousand #30 chairs were sold to a concern named Abbey Rents of Los Angeles, California, at a delivered price of $2.22 a chair, upon the understanding that they were to be used for renting purposes only. The price of $2.22 or $2.00 plus freight to Los Angeles represented a discount of 40 per cent off the March 1942 list price, a discount normally granted to retail dealers or consumers. Petitioner usually gave a discount of 50 per cent to jobbers and wholesalers. The O.P.A. officials objected to the price charged Abbey Rents because they claimed that petitioner was not giving the same discounts to the same class of customers as they did in March 1942. The same objection was made to certain sales of #10 chairs made to the Adirondack Chair Company of New York, to which company petitioner granted a 40 per cent discount because it did not believe this company to be a jobber or wholesaler for the reason that it employed no outside salesmen. Another source *56 of controversy with the O.P.A. was the sale of a plain unpainted #7 stepstool for the same price as had formerly been charged for a painted one containing rubber treads on the steps. However, this represented no saving in cost to petitioner because a finer grain of wood had to be used in manufacturing the unpainted stepstool. The paint and rubber were left off because they were unobtainable on account of war scarcity. After the O.P.A. investigation, the enforcement attorney wrote the petitioner making a triple damage claim. The exact amount of this claim is not known, though the O.P.A. enforcement attorney testified it was somewhere between $27,000 and $33,000. Several conferences were held between the O.P.A. officials and representatives of the petitioner in an effort to reach an amicable settlement. In these conferences Milton C. Wheeler, enforcement attorney for the O.P.A. in the Maine District, represented O.P.A. He knew about the investigation by O.P.A. representatives of petitioner for alleged O.P.A. violations and that these investigators had reported that in the course of its business petitioner had violated O.P.A. Regulation 188 in the sale of #30 chairs, #10 chairs, and *57 #7 unpainted stepstools. At the final conference of the parties Wheeler, acting in behalf of O.P.A., offered to accept $11,000 in settlement of the O.P.A.'s triple damage claims. Petitioner agreed to accept this offer and paid that amount by its check No. 8549 dated July 16, 1945, and drawn to the order of the Treasurer of the United States. Petitioner treated this payment to O.P.A. as a deduction from gross sales for the year 1945, and consequently it does not appear on the return as a separate item deduction for ordinary and necessary business expenses. Petitioner in good faith when it sold 6,000 #30 chairs to Abbey Rents of Los Angeles believed that company was not a jobber or wholesaler and was not entitled to its customary discount of 50 per cent off list price customarily given to jobbers and wholesalers, but was only entitled to a discount of 40 per cent customarily given to customers who were either retailers or users of chairs. Petitioner in good faith when it sold certain #10 chairs to Adirondack Chair Company believed that company was not a jobber or wholesaler and was not entitled to its customary discount of 50 per cent off list price customarily given to jobbers *58 and wholesalers, but was only entitled to a discount of 40 per cent customarily given to customers who were either retailers or users of chairs. Petitioner in good faith believed that when it sold the #7 unpainted stepstools in question at the same price as it had formerly sold #7 painted stepstools, it was not violating MPR 188. Petitioner used a better grade of wood in the manufacture of these unpainted chairs and the manufacturing cost of these chairs was fully as much as the #7 painted chairs which had been sold previously. Therefore, petitioner believed it was violating no O.P.A. regulation in settling them at the same price. In calculating its ceiling prices on its #30 chairs, its #10 chairs, and its #7 stepstools during the period in question, petitioner did not fail to take practicable precautions in applying the provisions of MPR 188 and petitioner's actions were in good faith and not the result of an unreasonable lack of care. Opinion BLACK, Judge: The main contention of petitioner in this proceeding is that it is entitled to take as a deduction as an ordinary and necessary business expense under section 23 (a) (1) (A) of the Internal Revenue Code *59 the $11,000 which it paid in 1945 to the Treasurer of the United States. in settlement of alleged violations of O.P.A. regulations. It was petitioner's contention that its violation of O.P.A. regulations, if any, was innocently done, that it had no wilful intent to violate such regulations, and that it took reasonable precautions to avoid such violations. We think petitioner has met its burden of proof on this issue and on the facts we have found that petitioner did not fail to take reasonable precautions in applying the provisions of MPR 188 in its sales to customers and petitioner's actions were in good faith and not the result of an unreasonable lack of care. Petitioner's president, Clarence G. Morton, its auditor, Orey Tolman, and its bookkeeper, H. W. Dennison, all testified at the hearing and we are well convinced from their testimony that petitioner did not wilfully violate MPR 188 and that any violations which it may have committed were innocently done and that petitioner had taken all reasonable precautions to avoid any such violations. Respondent's principal witness was Milton G. Wheeler who was O.P.A. enforcement officer of the Maine District at the time such alleged *60 violations occurred. There is nothing in his testimony which leads us to believe that petitioner's violations of MPR 188, if any, were wilful or were made without petitioner having taken all reasonable precautions to avoid any violation of the regulation in question. This being true, under the doctrine of our decision in Pacific Mills, 17 [T.C.] -, promulgated October 26, 1951, the decision in the instant case must be for the petitioner. Of course, the facts in the instant case are not the same as those in the Pacific Mills case because the two businesses are different and the dealings in the Pacific Mills case were much more extensive than the dealings in the instant case. However, those are not distinctions of principle, but merely of facts. We, therefore, hold following Pacific Mills that petitioner is entitled to deduct the $11,000 in question under section 23 (a) (1) (A) of the Code. As a result of this holding, it is unnecessary for us to decide petitioner's alternative contention. Decision will be entered for the petitioner.